IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES KOTUBY,
CAROL L. KOTUBY, individuals,
d/b/a ALIQUIPPA FOODLAND,

        Plaintiffs,                          05cv0771

        v.                                (related to 00cv1033)

                                             **ELECTRONICALLY FILED**

JOSEPH PETRILL, TED TEREK,
MICHAEL MAMMONE,
SUPERVALU HOLDINGS, INC.,

        Defendants.

---

## MEMORANDUM OPINION

**September 23, 2005**

Before the Court is defendants' motion to dismiss or, alternatively, for summary judgment (Document No. 2). After careful consideration of the motion, plaintiffs' response thereto, the memoranda of law in support and in opposition, and defendants' appendix in support of summary judgment, the Court finds unsurpassable threshold impediments to plaintiffs' claims, and thus will grant summary judgment in defendants' favor.

When the Court considers a Rule 12(b)(6) motion to dismiss, the issue is not whether plaintiff will prevail in the end, or whether recovery appears to be unlikely or even remote. The Court accepts the well-pleaded factual allegations of the complaint as true, and draws all reasonable inferences therefrom in favor of the plaintiff. *Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hospital*, 185 F.3d 154, 155 (3d Cir. 1999). A claim should not be dismissed for failure to state a claim unless it appears beyond a doubt that the non-moving party can prove no set of facts in support of its allegations which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Marshall-Silver Construction Co. v. Mendel*, 894 F.2d 593,

595 (3d Cir. 1990).

The issue is limited to whether, when viewed in the light most favorable to plaintiff, and with all well-pleaded factual allegations taken as true, the complaint states any valid claim for relief.  In this regard, the Court will not dismiss a claim merely because plaintiff's factual allegations do not support the particular legal theory he or she advances.  Rather, the Court is under a duty to independently examine the complaint to determine if the factual allegations set forth could provide relief under any viable legal theory.  *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357, at 337 & n.40 (2d ed. 1990).

Ordinarily, where, as here, the parties have referred to matters outside the pleadings, Rule 12(b) requires that the motion to dismiss be treated as one for summary judgment.  Before a Court converts a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56, the Court must give notice to the plaintiff that it is considering summary judgment, so that plaintiff has a full and fair opportunity to respond in like form, with documents and other supporting materials.  *Crown Cent. Petroleum Corp. v. Waldman*, 634 F.2d 127, 129 (3d Cir. 1980).

Notice and "conversion" are not issues in this case.  Defendants filed their dispositive motion in the alternative, as one to dismiss or for summary judgment.  Plaintiffs responded to the motion for summary judgment without objecting to resolution by summary judgment at this early stage, without requesting any threshold interrogatories, depositions or other discovery, and without offering any supporting documents or other materials as an appendix to their response or brief in opposition.  Moreover, plaintiffs' complaint itself attaches several extraneous documents.  Accordingly, the motion for summary judgment is ripe for review, and the Court will apply the standards for reviewing a motion for summary judgment, which are as follows:

> Under Federal Rule of Civil Procedure 56(c), summary judgment is proper where no genuine issue of material fact exists, and where, viewing the facts in the light most favorable to the party against whom summary judgment was entered, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

*Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.)

**The Complaint**

Plaintiffs Charles T. Kotuby, Sr. and Carol L. Kotuby, d/b/a/ Aliquippa Foodland, have filed this action as a "related case," and indeed it is.  These same plaintiffs (and others not party to this suit) were the named defendants in a previous lawsuit in this Court brought by corporate defendant Supervalu Holdings, Incorporated: *Supervalu Holdings, Inc. v. FM Holdings, Inc., Charles T. Kotuby and Carol Kotuby*, *inter alia*, Civil Action No. 00-1033 (United States District Court for the Western District of Pennsylvania) which resulted in a mutual release and settlement on August 7, 2000.  Both lawsuits arise from the *exact same* set of facts and circumstances.

Plaintiffs claim in this lawsuit that defendants intentionally mislead them by misrepresenting certain facts which induced plaintiffs to take on more debt than they could handle, which ultimately forced them to declare bankruptcy on their store, the Aliquippa Foodland.  Supervalu and the individual defendants who are its officers in the Central Region, which includes Aliquippa, mislead plaintiffs about the expected closing of another store in the Foodland/ Shop 'n Save family of supermarkets located near plaintiffs' store, and induced them

to borrow lots of money ($160,000 from Mellon Bank, and a $50,000 line of credit from American Express) to remodel the Aliquippa Foodland in anticipation of increased business. Supervalu also committed $70,000 toward the remodeling.

Plaintiffs claim defendants knew that the other store was not, in fact, closing when promised (in fact it reopened under another name) and that because of the competition from that store and business lost because of the remodeling, the Aliquippa Foodland became unprofitable. Adding to the dire situation, Jan Timothy, a Supevalu employee in account management services, was keeping shoddy books on their account owing to Supervalu, did not press plaintiffs for monies owed Supervalu for inventory and other services, did not give plaintiffs accurate running accounts of the balances owed, and did not invoice them.

Apparently, neither the Kotubys or anyone else at the Aliquippa Foodland kept track of how much they owed Supervalu either.  Thus, plaintiffs claim to have been completely surprised when, on May 17, 2000, Supervalu notified plaintiffs they were $557,076 in debt to Supervalu.

On May 25, 2000, Supervalu filed its civil lawsuit against the Kotubys, seeking about $784,000 in delinquent accounts, and alleging conversion, theft and breach of contract. According to plaintiffs, Supervalu based these claims, "on the admitted criminal activity of their employee, Jan Timothy, and the Kotubys' alleged unsubstantiated collusion therewith." Complaint, ¶ 28.  This lawsuit ended, at least as far as the Kotubys were concerned, by settlement in August 2000.  Plaintiffs state that the lawsuit was settled with the Kotubys paying $130,000 against the delinquency, borrowing $633,057 to cover the remainder, and executing a mutual release of all claims that had accrued prior to the date of the release.  Complaint, ¶ 31.

Unable to maintain their debt payments, "the Kotubys filed for protection under chapter

4

11 of the Bankruptcy Code in December 2002, and eventually closed their business under

Chapter 7 of the Bankruptcy Code in September 2003."  Complaint, ¶ 39.

Claiming that defendants misrepresented the situation with their competitor in April

1999, and continued the misrepresentation by continuing to take payments from plaintiffs on

their bills for inventory and services, plaintiffs now make the following claims: Count I:

Fraudulent Misrepresentation; Count II: Negligent Misrepresentation; Count III: Fraud; Count

IV: Tortious Interference with Business Relations; Count IV: Violations of 18 U.S.C. § 1962(c)

(racketeering); and Count VI: Violations of 18 U.S.C. § 1962(d) (racketeering). (The parties

apparently agree that Pennsylvania common law governs the non-RICO claims.)

**Mutual Release**

As plaintiffs admit in their complaint, they executed a mutual release as part of their

Settlement Agreement with Supervalu on its claims that they engaged in a scheme along with Jan

Timothy to steal money from Supervalu.  In that agreement, Defendants' Appendix, Exhibit A,

plaintiffs agree that they are indebted under their  "Relationship Documents" with Supervalu in

an amount of over $900,000, although they would have asserted certain counterclaims had the

case proceeded.  The agreement of course includes a separate but integral general release which

provides, in relevant part, as follows:

> CHARLES KOTUBY and CAROL KOTUBY, individually and on
> behalf of Aliquippa Foodland, for good and valuable consideration,
> have released, acquitted and discharged, and . . . forever release,
> acquit and discharge [Supervalu] and its successors, affilates and
> assigns, of any and all form of liability, losses, claims, actions,
> causes of action, damages or demands, of every kind and character,
> . . . in any manner here or hereafter arising directly or indirectly
> from damages sustained by [the Kotubys] in the operation of their
> Aliquippa Foodland store . . . which accrued prior to the date of

5

this Mutual Release . . . ."

Defendants' Appendix, Exhibit B to Exhibit A.

The claims plaintiffs attempt to raise in this lawsuit are barred by the plain language of this mutual release, and by operation of Pennsylvania law.  As summarized by a colleague in the United States District Court for the Eastern District of Pennsylvania:

> The courts of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language and interpreted the release as covering only such matters as can fairly be said to have been within the contemplation of the partes when the release was given." *Vaughn v. Didizian*, 436 Pa.Super. 436, 648 A.2d 38, 40 (1994) (citations, internal punctuation omitted); *see also Jordan v. SmithKline Beecham, Inc.*, 958 F.Supp. 1012, 1019 (E.D.Pa. 1997) (same). While Pennsylvania courts strictly construe releases so as not to bar causes of action that have not yet accrued, *see, e.g., Vaughn*, 648 A.2d at 40, a party cannot avoid the clear language of a release by stating that he or she did not intend to release a particular claim. *See Jordan*, 958 F.Supp. at 1020. That is, if the language and intent indicate that even unaccrued or unknown claims are to be released, that intent will be enforced. See id. at 1019- 20. "Pennsylvania law is clearly that where the parties manifest an intent to settle all accounts, the release will be given full effect even as to unknown claims." *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 896 (3d Cir.1975); *see also Total Containment, Inc. v. Environ Prods., Inc.*, 921 F.Supp. 1355, 1415 (E.D.Pa.1995) (same).

*Stornaway Properties, Inc. v. Moses*, 76 F.Supp.2d 607, 610 (E.D.Pa. 1999).

Releases are construed in accordance with traditional principles of contract law.  *Clark v. Philadelphia College of Osteopathic Medicine*, 693 A.2d 202, 207 (Pa.Super. 1997), *appeal dismissed as improvidently granted*, 557 Pa. 487, 734 A.2d 859 (1999). Thus, "a release not procured by fraud, duress, or mutual mistake is binding between the parties." *Strickland v. University of Scranton*, 700 A.2d 979, 986 (Pa.Super. 1997). Therefore, parties with possible

6

claims "may settle their differences with each other upon such terms as are suitable to them . . . .

However improvident their agreement may be or subsequently prove for either party, their

agreement, absent fraud, accident or mutual mistake, is the law of their case." *Clark, supra* at

207 (*citing Buttermore v. Aliquippa Hospital*, 522 Pa. 325, 328-29, 561 A.2d 733, 735 (1989).

Plaintiffs attempt to dance around the preclusive binding effect of their own release by

arguing they did not "discover" defendants' fraud until 2005, when they learned that Supervalu

had filed a lawsuit against Jan Timothy in the Court of Common Pleas of Westmoreland County,

Pennsylvania, seeking $3.6 million for fraud and breach of employment duties for his

mismanagement and mishandling of accounts, including the Kotubys' account. (The complaint in

the Court of Common Pleas is attached to plaintiffs' complaint.)  Thus, plaintiffs attempt to

resurrect their moribund claims (assuming they had any legitimate claims) that have been

extinguished by their mutual release, and avoid the respective statutes of limitations as well (two

years, for the state common law claims, 42 Pa.C.S. § 5524; four years for the RICO claims,

*Agency Holding Corp. v. Malley-Duff & Assoc. Inc.*, 483 U.S. 143, 156 (1987)) by pushing out

the accrual date to the date they learned that Supervalu was attempting to recoup some of the

losses caused by Jan Timothy.

On the merits, the Court has great difficulty reading anything nefarious into the attempt

by a corporation to seek recompense from a former employee simply because it already has

sought and procured some recompense from one of his alleged "partners" in some part of the

fraud.  The Court need not and does not, however, address the merits, because the mutual release

executed by the Kotubys on August 7, 2000 completely bars them from circumventing its lawful

effect by this lawsuit.

Whatever plaintiffs may have learned from the filing of a lawsuit in state court against Jan Timothy, that "discovery" does not alter the already accrued causes of action which arose from the same facts and circumstances leading to Supervalu's lawsuit at Civil Action No. 00-1033 and its settlement agreement with the Kotubys.  Plaintiffs' memorandum of law in opposition to summary judgment is filled with adjectives and some discussion of how the law supports their causes of action, but contains little or no discussion of the threshold question of when a cause of action accrues for purposes of the respective statutes of limitations or for purposes of the legal effect of the mutual release.  *See Rotella v. Wood*, 528 U.S. 549 (2000) (in RICO action, accrual of patient's action was not delayed until he discovered alleged pattern of racketeering activity).  The Court deems plaintiffs' silence on this critical threshold issue indicative of the hopelessness of their position.

Because plaintiffs have released all of the claims they attempt to raise herein, because the statutes of limitations have long since run on all of their claims, and because plaintiffs have not even attempted to muster the facts or legal arguments that might convince the Court that the causes of action did not accrue until much later in the day, the Court will grant the motion for summary judgment and enter summary judgment in favor of defendants.

An appropriate order will be entered.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:  All counsel of record as listed below

8

Nick A. Frisk, Jr., Esquire
113 Fifth Street
Ellwood City, PA 16117

Charles Kelly, Esquire
Kristin L. Anders, Esquire
Sinclair, Kelly, Jackson, Rienhart & Hayden
501 Corporate Drive, Suite 200
Canonsburg, PA 15317